IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| IN RE TONOPAH SOLAR ENERGY, LLC, ) | Chapter 11 |
| ) | Case No. 20-11844 (KBO) |
| Reorganized Debtor. ) | |
| TONOPAH SOLAR ENERGY, LLC, ) | |
| ) | |
| Appellant, ) | |
| ) | |
| v. ) | C.A. No. 21-219 (MN) |
| ) | |
| CMB EXPORT, LLC, *et al.*, ) | |
| ) | |
| Appellees. ) | |

## MEMORANDUM OPINION

Edmon L. Morton, Matthew B. Lunn, Ashley E. Jacobs, Jared W. Kochenash, Young Conaway Stargatt & Taylor, LLP, Wilmington, DE; Paul V. Shalhoub, Todd G. Cosenza, Charles D. Cording, Ciara A. Copell, Willkie Farr & Gallagher LLP, New York, NY – Counsel to Appellant.

Francis G.X. Pileggi, Cheneise V. Wright, Lewis Brisbois Bisgaard & Smith LLP, Wilmington, DE; Vincent F. Alexander, Lewis Brisbois Bisgaard & Smith LLP, Fort Lauderdale, FL; Andrew Bluth, Lewis Brisbois Bisgaard & Smith LLP, Sacramento, CA – Counsel to Appellees.

March 30, 2022
Wilmington, Delaware

**NOREIKA, U.S. DISTRICT JUDGE:**

Pending before the Court is an appeal by reorganized debtor Tonopah Solar Energy, LLC ("Debtor" or "Tonopah") from the Bankruptcy Court's February 1, 2021 *Order (I) Clarifying Parties' Right to Proceed with Respect to Nevada Action and Delaware Action; (II) Abstaining from Adjudicating Claim Objection; and (III) Denying Abstention Motion as Moot* (B.D.I. 337)[1] ("Abstention Order"), entered for the reasons set forth on the record at a January 12, 2021 status conference (A1548-1565). Appellees[2] filed proofs of claim in the Debtor's Chapter 11 case based on litigation claims pending in the Nevada state court and the Delaware Court of Chancery. Debtor filed an objection to the proofs of claim, which included a motion to dismiss the claims based on Appellees' alleged lack of standing and failure to state a claim under Rule 12 of the Federal Rules of Civil Procedure (A430-519) ("Claim Objection"). Following briefing of the Claim Objection and entry of an order confirming Debtor's plan, the Bankruptcy Court held a status conference on the Claim Objection. A few hours prior to the status conference, Appellees filed a motion requesting, for the first time, that the Bankruptcy Court abstain from adjudicating the Claim Objection pursuant to the permissive abstention doctrine set forth in 28 U.S.C. § 1334(c)(1). Without permitting Debtor the opportunity to be heard on the issue of abstention, the Bankruptcy Court determined to permissively abstain from adjudicating the Claim Objection and deny the Abstention Motion as moot. For the reasons set forth herein, the Court will affirm the Abstention Order.

---

[1] The docket of the chapter 11 cases, captioned *In re Tonopah Solar Energy, LLC*, Case No. 20-11884 (KBO) (Bankr. D. Del.), is cited herein as "B.D.I. __." The appendix (D.I. 11) filed in support of Debtor's opening brief (D.I. 10) is cited herein as "A__."

[2] CMB Export, LLC ("CMB Export"), CMB Infrastructure Investment Group IX, LP ("CMB Group IX," and together with CMB Export, "CMB"), and SolarReserve CSP Holdings, LLC ("SolarReserve," and collectively with CMB, "Appellees")

## I.   **BACKGROUND**

### A.   **The Debtor**

Tonopah owns and operates a net 110-megawatt concentrated solar energy power plant ("Plant") located near Tonopah in Nye County, Nevada. (A0218). The Plant, also known as the Crescent Dunes Solar Energy Project ("Project"), was to be the first utility-scale solar project of its kind in the U.S. to store energy as heat in the form of molten salt, effectively functioning as a giant battery with the capability to generate electricity at night. (*Id.*). The development of the Project depended on identifying a construction company that would assume the risks associated with the required engineering, procurement, and construction contract. (A0219). In September 2011, Tonopah executed a contract with Cobra Thermosolar Plants, Inc. ("CPI") to provide engineering, procurement, and construction services in connection with the Project. (*Id.*).

The Project was funded through equity investments from an affiliate of SolarReserve, Cobra Energy Investments, LLC ("CEI"), which is an affiliate of ACS Servicios Comunicaciones y Energía S.L. ("ACS" and, together with CEI and CPI, "Cobra"), and Banco Santander, S.A. ("Banco Santander"). (*Id.*). In addition, Tonopah and the U.S. Department of Energy ("DOE") entered into a Loan Guarantee Agreement, dated September 23, 2011 ("LGA"), whereby the DOE guaranteed a project loan made to Tonopah by the Federal Financing Bank ("DOE Loan"). (*Id.*). In connection with its obligations under the LGA, SolarReserve obtained $90 million in financing from CMB Group IX, which loan was memorialized in the "Group IX Loan Agreement." (A0059-60). Tonopah is not a party to the CMB Group IX Loan Agreement. (*Id.*).

As of the petition date, all of the equity interests in Tonopah were owned by nondebtor Tonopah Solar Energy Holdings II, LLC ("TSEH II"). (A0226). The equity interests in TSEH II were divided into two classes: Class A Units held solely by Capital One as a tax equity investor and Class B Units owned by non-debtor Tonopah Solar Energy Holdings I, LLC ("TSEH I"). (*Id.*). TSEH

I was owned indirectly by Banco Santander (26.8%) and directly by non-debtor Tonopah Solar Investments, LLC (73.2%) ("TSI LLC").  (*Id.*).  CEI and SolarReserve each held 50% of TSI LLC. (*Id.*).  Therefore, both CEI and SolarReserve were thrice removed remote, indirect owners of Tonopah, but neither was the holder of an equity interest directly in Tonopah.

Tonopah commenced commercial operations and production at the Plant in November 2015. (A0219).  The electricity generated by the Plant was sold exclusively to the Nevada Power Company, d/b/a NV Energy ("NVE") under a long-term power purchase agreement ("PPA").  (A0218).  In late March 2019, the Plant's hot salt tank – an essential component in the operation of the Plant – experienced a leak, which required Tonopah to halt all power generating operations at the Plant. (A0222).  Although CPI commenced repairs to the tank, the Plant was unable to produce any electricity beginning in April 2019, also ending Tonopah's ability to generate revenue.  (*Id.*).  In September 2019, DOE sent Tonopah a Notice of Events of Default alleging that Tonopah was in default under the LGA.  (A0223).  NVE terminated the PPA in October 2019.  (A0226).

In early 2020, facing liquidity issues, Tonopah, CPI, CEI, ACS Servicios Comunicaciones y Energía S.L. ("ACS"), and the DOE began discussions regarding the compromise and settlement of the DOE's claims for an agreed-upon reduced amount.  (A0227).  Ultimately, following months of extensive arm's length negotiations, Tonopah, CPI, CEI and ACS, with the support of the DOE, entered into a Restructuring Support Agreement ("RSA"), which provided that: (a) DOE would receive, in full and complete satisfaction of Tonopah's outstanding obligations under the Loan Documents (as defined in the LGA), a payment of $200 million in cash upon the effective date of the Plan, plus a $100 million contingent note to be guaranteed by Cobra (as defined in the RSA), with Cobra funding Tonopah's obligations under the Plan through new debt financing and cash to be provided on the effective date of the Plan; (b) the security interests granted under the Security Documents (as defined in the LGA) would be released; (c) the parties would enter into mutual,

consensual releases of all claims against each other on the terms set forth in the Plan; (d) Cobra or an affiliate thereof would own 100% of Tonopah upon completion of the restructuring; and (e) all other claims would remain unimpaired as set forth in the Plan.

### B.      Chapter 11 Case

On July 30, 2020 ("Petition Date"), Debtor commenced a voluntary case under chapter 11 the Bankruptcy Code.  The same day, Debtor filed a proposed plan (A0145-201) (as amended, "Plan"), which embodied the terms of the RSA, along with a related disclosure statement (A0202-368). Appellees filed objections to various requests for relief filed by Debtor, including to Debtor's consensual use of cash collateral and approval of its Disclosure Statement (both of which were overruled by the Bankruptcy Court), and also served multiple and voluminous discovery requests on Tonopah.  (A0001-12, A0037-48).  Appellees' standing to participate in the chapter 11 case was challenged by Tonopah and questioned by the Bankruptcy Court throughout the bankruptcy proceedings.  (*See, e.g.*, A0013-36) ("8/24/20 Tr." at 20:3-7 ("Solar Reserve's . . . standing . . . to be heard in connection with this matter seems to be questionable at best[.]"); A0369-0412 ("9/4/20 Tr.") at 39:3-5 ("[Appellees] don't have standing to object to the disclosure statement in their capacity as a remote investor and non-voting party[.].").

### C.      Proofs of Claim and Underlying Litigation

Despite the fact that no bar date was set for proofs of claim—as all creditors with the exception of DOE were unimpaired under the proposed plan—Appellees filed proofs of claim in the chapter 11 case.  CMB Group IX and CMB Export filed proofs of claim on September 3, 2020 ("CMB Proofs of Claim") and SolarReserve filed a proof of claim on September 22, 2020 ("SolarReserve Proof of Claim" and collectively with the CMB Proofs of Claim, the "Proofs of Claim").  (A0049-96, 97-144 & 413-29).  CMB's proofs of claim asserted a general unsecured claim against Tonopah in the amount of $90 million based upon a complaint (as amended, "Nevada Complaint") filed on May 19, 2020 in

4

Nevada state court against Cobra, certain Cobra affiliates, and Tonopah, among others ("Nevada Action"). On February 9, 2021, Cobra Finance, CEI, CIS, CPI, Cobra Instalaciones, ACS, and Banco Santander removed the Nevada Action to the United States District Court for the District of Nevada ("Nevada District Court"). *CMB Infrastructure Group IX, LP, et al. v. Cobra Energy Investment Finance, Inc., et al.*, Case No. 2:21-CV-00214-JAD-DJA (D. Nev. 2021) ("Nevada Action").

The crux of allegations in the Amended Complaint is that the Project was beset with significant difficulties from inception due to the actions of CPI, the construction contractor, ultimately leading to the Project's failure to meet its electrical power generation requirements under the PPA, termination of the PPA, and SolarReserve's inability to repay the CMB Loan. (*Id.* A0060). According to Appellees, "[t]he Project's failure is due almost entirely to [CPI and its] affiliates," specifically because "[CPI] partially constructed and prematurely delivered a grossly defective, non-functioning power plant." (*Id.* ¶ 5). Appellees allege that CPI "thereafter engaged with its parents and affiliates in a complex scheme designed to shift blame to SolarReserve and to shield themselves from responsibility," which included "misrepresenting the Project's condition to [CMB] and withholding from them information that would have enabled [CMB] to undertake efforts to mitigate or avoid their losses caused by SolarReserve's failure to repay its indebtedness." (*Id.*) Appellees asserted several claims against Tonopah in the Complaint, including: (i) fraud; (ii) aiding and abetting fraud; (iii) aiding and abetting interference with the Group IX Loan Agreement; (iv) intentional interference with contractual relations; and (v) aiding and abetting breach of fiduciary duty.

SolarReserve's proof of claim asserted a general unsecured claim against Tonopah asserting unliquidated monetary damages based upon a nonmonetary action ("Books and Records Action") filed by SolarReserve against Tonopah in the Delaware Court of Chancery on February 5, 2020, seeking to enforce its alleged contractual right to inspect Tonopah's books and records. (A0422-29). Prior to Tonopah's bankruptcy filing, however, after a one-day bench trial, the Court of Chancery

resolved the action in Debtor's favor, holding that SolarReserve could not enforce its purported inspection rights because (a) it had assigned all claims it had against Tonopah to CMB, and (b) Tonopah's operating agreement expressly denied information rights to "unaffiliated successors" such as CMB. *SolarReserve CSP Holdings, LLC v. Tonopah Solar Energy, LLC*, 2020 WL 4251968, at *5-6 (Del. Ch. July 24, 2020).  The decision was on appeal at time of the confirmation hearing.

> **D.      Claim Objection**

On October 1, 2020, Debtor filed its Claim Objection (A430-519) ("Claim Objection") seeking entry of an order (a) determining that CMB and SolarReserve lacked standing in the Chapter 11 case and (b) disallowing the Proofs of Claim for lack of standing and failure to state a claim under applicable law against Debtor.  The Claim Objection was fully briefed.  (A0520-548;. A0549-665). On October 27, 2020, the Bankruptcy Court held a hearing on the Claim Objection (A0666-89) ("10/27/20 Tr.").  The court indicated that it would not be able to render a decision on the Claim Objection prior to the start of Plan confirmation proceedings.  (*Id.* at 8:2-9 ("I need more time to fully digest the merits of the issues that have been raised and I'm not confident that I'm going to be able to render a ruling in a sufficient time to allow for the confirmation proceedings to go forward on the current timetable if the parties were to wait for my ruling[.]")).  The court also repeated its prior rulings regarding Appellees' limited standing as a creditor and not as an indirect equity holder, stating that even if Appellees held valid claims against the Debtor, "they are unimpaired under the plan" and did not possess standing to object to the portions of the Plan that did not affect their direct interests. (*See id.* at 8:24–10:5).  At the Bankruptcy Court's suggestion, Debtor and Appellees agreed to continue the hearing on the Claim Objection until a date after confirmation.  (*Id.* at 16:9-23).  At no time before, after, or during the October 27 hearing, until Appellees' late filing of their Abstention Motion months later and just hours prior to the Bankruptcy Court's *sua sponte* determination to abstain, did Appellees or the court raise the issue of abstention.

### E.    Confirmation of the Plan and Related Appeal

On November 6, 2020, Appellees filed a plan objection (A0689-710) ("Confirmation Objection").   Despite the Bankruptcy Court's prior ruling regarding the permissible scope of objections that could be raised by Appellees as, at most, unimpaired claim holders, the Confirmation Objection included a litany of challenges including that: (i) the Plan did not meet the feasibility requirement of § 1129(a)(11) of the Bankruptcy Code; (ii) notwithstanding the express terms of the Plan, unsecured creditors were impaired under the Plan and therefore entitled to vote; (iii) the Plan was not proposed in good faith as required by § 1129(a)(3) of the Bankruptcy Code; (iv) the Plan did not satisfy § 1129(a)(7)'s best interests test because creditors would fare better under a liquidation of Tonopah; (v) the Plan releases and exculpation were overbroad; and (vi) Tonopah failed to identify contracts it sought to assume.   Given the court's prior ruling, a dispute arose regarding the scope of expert witness testimony.   (A0565-0612 ("11/16/20 Tr.") at 3:8-17).   Based on their status as unimpaired, unsecured creditors, Tonopah argued Appellees lacked standing to challenge the reasonableness of the settlement embodied in the Plan, as well as whether the Plan satisfied the best interests of creditors test, was proposed in good faith, and included releases that were overbroad, as those provisions did not impact Appellees' treatment and ultimate recovery or were inapplicable.   (*Id.* at 9:20-12:11).   Tonopah requested that court limit the scope of Appellees' expert testimony.   (*Id.* at 12:12-21).   The court agreed and ruled that Appellees' expert testimony must be limited to feasibility. (*Id.* at 18:5-11; *see also* 37:4-25; 38:1-7).

On November 20, 2020 (A0613-0832) ("11/20/20 Tr.") and December 3, 2020 (A0833-0932) ("12/3/20 Tr."), the Bankruptcy Court held a two-day hearing ("Confirmation Hearing").   As the result of mediation sessions conducted by the Honorable Brendan L. Shannon at Judge Owens' suggestion, Tonopah and Cobra presented enhancements to the Plan made for the benefit of Appellees: Cobra agreed to (i) provide a $6 million irrevocable letter of credit ("CMB/SR Letter of

Credit") in favor of Appellees as a reserve to be drawn on in the event that Appellees obtain a final, non-appealable judgment against Tonopah in the Nevada Action or the Books and Records Action; and (ii) increase the post-effective date working capital facility by $14 million (to a total of $64 million). (*See* 12/3/20 Tr. at 6:18-25; 7:1-21).

At the conclusion of the Confirmation Hearing, the Bankruptcy Court ruled that the Plan, as modified by these enhancements, satisfied each of the Bankruptcy Code's confirmation standards (*id.* at 93:9-15) and subsequently entered an order confirming the Plan on December 9, 2020 (A1079-1235) ("Confirmation Order"). The Plan went effective on December 18, 2020. (A1236-38). On December 23, 2020, Appellees filed a timely notice of appeal of the Confirmation Order. (D.I. 1).

### F. Status Conference and Abstention Order

On January 12, 2021, the Bankruptcy Court held a status conference on the Claim Objection (*See* A1548-65) ("1/12/21 Tr.") ("Status Conference"). Just hours before the Status Conference, Appellees filed the Abstention Motion, requesting that the Bankruptcy Court abstain from adjudicating the Claim Objection pursuant to the permissive abstention doctrine set forth in 28 U.S.C. § 1334(c)(1). Appellees asserted that the court had nothing left to administer in light of entry of the Confirmation Order. Appellees did not notice the Abstention Motion for a hearing.

The Bankruptcy Court began the Status Conference by acknowledging that the Claim Objection had been fully briefed and requested that Tonopah and Appellees provide an overview of where the Claim Objection stood. (1/12/21 Tr. at 4:3-15). The Claim Objection was fully briefed and ready for argument, and, until the morning of the Status Conference, and Debtor was prepared to request a hearing for the Claim Objection. (*See id.* at 4:16–8:23). Debtor advised the Bankruptcy Court that although it was not prepared to address the substance or merits of abstention, it believed the arguments in the Abstention Motion were flawed and ignored various bankruptcy-related matters that would be impacted by adjudication of the Claim Objection. (*Id.*). The Bankruptcy Court stated

that it had seen the Abstention Motion but assured Tonopah that it did not need argument "on anything with respect to the abstention request [at the Status Conference]." (*Id.* at 6:17-20). Both Tonopah and Appellees informed the Bankruptcy Court that they were open to scheduling the hearing on the Abstention Motion at the same time as the Claim Objection. (*Id.* at 8:11-23, 11:4-7).

The Bankruptcy Court noted it "could avoid some further briefing and discussion [on the issues between the parties]" by providing its thoughts on how to move forward with the Claim Objection and underlying actions. (*Id.* at 12:12-15). First, the Bankruptcy Court declined to construe the Claim Objection as a motion to dismiss for failure to state a claim under applicable law pursuant to Rule 12 of the Federal Rules of Civil Procedure, which the Bankruptcy Court has discretion to consider pursuant to Bankruptcy Rule 9014. (*Id.* at 12:16-21). The Bankruptcy Court stated that it may have considered the Rule 12 issues raised by the Claim Objection prior to confirmation if sufficient time was provided, but it did not believe consideration of the Claim Objection post-confirmation would be an efficient use of time. (*Id.* at 12:21-25; 13:1-5).

Second, notwithstanding that the Bankruptcy Court did not hear argument on permissive abstention, and that it had directed the parties to hold any such arguments in abeyance, the Bankruptcy Court *sua sponte* determined to abstain from adjudicating the Claim Objection. (*See id.* at 12:16–14:23). Specifically, with respect to the Nevada Action, the Bankruptcy Court reasoned that it was based entirely on state law and involved overlapping questions of fact and law that need to be answered for both Debtor and the non-debtor parties. (*Id.* at 13:18-23). The Bankruptcy Court further stated that there were no bankruptcy reasons necessitating the piecemeal adjudication of the Nevada Action. (*Id.* at 13:25–14:2). Accordingly, the Bankruptcy Court directed the parties to submit a proposed form of order consistent with its ruling. (*Id.* at 14:8-13). On February 1, 2021, the Bankruptcy Court entered the Abstention Order. On February 16, 2021, Debtor filed a notice of

appeal with respect to the Abstention Order, thereby commencing this appeal.  (D.I. 1).  The appeal is fully briefed.  (D.I. 10-13).

### G.      Status of Litigation Underlying the Proofs of Claim

#### 1.      Nevada Action

The docket of the Nevada Action reflects that, on March 11, 2021, Appellees filed a Motion to Remand the action to Nevada state court.  On March 11, 2021, various Cobra defendants filed a Motion to Compel Arbitration (*id.*, D.I. 24) in accordance with an arbitration clause contained in Cobra Instalaciones y Servicios S.A.'s guaranty of Cobra Energy Investment Finance, Inc.'s performance under a certain loan agreement, which requires that any dispute arising in connection with the guaranty must be finally resolved in the International Court of Arbitration of the International Chamber of Commerce, in accordance with ICC Rules of Arbitration.  On July 30, 2021, Tonopah filed a Motion to Dismiss the Nevada Action (*id.*, D.I. 60).  On November 15, 2021, the Nevada District Court issued an Order (*id.*, D.I. 70), *inter alia*, (i) denying the Motion to Remand to Nevada state court; (ii) granting the Motion to Compel Arbitration, (iii) granting, in part, Tonopah's Motion to Dismiss and dismissing with prejudice Appellees' claim for aiding and abetting tortious interference with contract, which is not cognizable under Nevada law; and (iv) staying the entire Nevada Action pending the outcome of the arbitration (with the exception of certain limited jurisdictional discovery not relevant to this action).

#### 2.      Books and Records Action

Prior to Tonopah's bankruptcy filing, the Court of Chancery resolved the Books and Records Action in Debtor's favor, holding that SolarReserve could not enforce its purported inspection rights.  *SolarReserve*, 2020 WL 4251968, at *5-6.  That decision was on appeal at time of the confirmation hearing.  The Delaware Supreme Court later dismissed the appeal as moot.  *SolarReserve CSP Holdings, LLC v. Tonopah Solar Energy, LLC*, 258 A.3d 806 (Del. Aug. 9, 2021).  As the chapter 11

proceeding resulted in Tonopah's reorganization, along with a new LLC Agreement that eliminated the inspection provision at issue, the parties agreed that the relief in the underlying books and records action could not be granted.  *Id*. at *1.

## II.    <u>JURISDICTION AND STANDARD OF REVIEW</u>

The Court has jurisdiction to hear an appeal from a final judgment of the bankruptcy court pursuant to 28 U.S.C. § 158(a)(1).  On appeal from an order of the Bankruptcy Court, this Court reviews the Bankruptcy Court's "exercise of discretion for abuse thereof."  *In re Energy Future Holdings Corp.*, 558 B.R. 684, 686 (D. Del. 2016); *In re SemCrude L.P.*, 2012 WL 5554819, at *4 (D. Del. Nov. 15, 2012) (reviewing a bankruptcy court's order regarding permissive abstention for abuse of discretion).  "Abuse of discretion is found where a 'court's decision rests upon a clearly erroneous finding of fact, an errant conclusion of law, or an improper application of law to fact.'" *Energy Future Holdings*, 558 B.R. at 686 (citing *Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am., UAW v. Mack Trucks, Inc.*, 820 F.2d 91, 95 (3d Cir. 1987)).

## III.   <u>ANALYSIS</u>

### A.    **Permissive Abstention Under 28 U.S.C. § 1334(c) and the Bankruptcy Rules**

Section 1334(c) of title 28 provides for abstention by the bankruptcy court from hearing a particular bankruptcy proceeding.  The bankruptcy court determines whether it should exercise jurisdiction over a particular proceeding or, in the interests of comity and judicial economy, relinquish jurisdiction.  The statute provides, in relevant part:

> (c)(1) Except with respect to a case under chapter 15 of title 11, ***nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11***.
>
> (2) Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States

absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.

28 U.S.C. § 1334(c) (emphasis added).

Bankruptcy Rule 5011(b) governs a motion for abstention.  9 COLLIER ON BANKRUPTCY ¶ 5011.02 (16th ed.).  A motion for abstention pursuant to § 1334(c) is a contested matter governed by Bankruptcy Rule 9014.  Fed. R. Bankr. P. 5011; 9 COLLIER ON BANKRUPTCY APP. 5011 (reciting 1991 Advisory Committee Note to Rule 5011).  Bankruptcy Rule 9014 governs contested matters and provides that "reasonable notice and opportunity for hearing shall be afforded the party against whom relief is sought." Fed. R. Bankr. P. 9014(a).  "The clear intention of Rule 9014 is that, when a response to a motion is filed, a hearing must be held in order to determine the contested matter; it is an abuse of discretion for the judge to grant the motion without holding such a hearing."  10 COLLIER ON BANKRUPTCY ¶ 9014.03 (16th ed.).

With respect to permissive abstention, however, a motion is not required – the issue may be raised by motion of a party, as discussed below, and it may also be raised by the Bankruptcy Court *sua sponte*.  Given the unusual procedural posture in which the Bankruptcy Court reached its abstained ruling here, it is unclear whether there was a "contested matter" before the Bankruptcy Court that required "reasonable notice and opportunity for hearing."   Fed. R. Bankr. P. 9014(a).  It appears from the bench ruling that the Bankruptcy Court intended to raise permissive abstention *sua sponte* at the Status Conference, received Appellees' request mere hours before, but ultimately viewed its permissive abstention as a *sua sponte* decision—not as a grant of the relief sought in the Abstention Motion.   Indeed, the Abstention Order denies the Abstention Motion as "moot."   In these circumstances, the Abstention Order arguably does not run afoul of Bankruptcy Rule 9014(a).

**B.      The Bankruptcy Court May Raise Permissive Abstention *Sua Sponte***

Based on the plain language of § 1334(c)(1), a bankruptcy court may raise permissive abstention *sua sponte*.  Although "[a] court may not apply the principles of mandatory abstention absent a 'timely motion of a party,' "nothing prevents a bankruptcy court from considering the issue of permissive abstention *sua sponte*."  *In re LTC Holdings, Inc.*, 587 B.R. 25, 29–30 (Bankr. D. Del. 2018).  The parties agree.  (D.I. 10 at 17; D.I. 12 at 39).  Debtor argues, however, that although the Bankruptcy Court may raise abstention *sua sponte*, it was an abuse of discretion for it to render its ruling without allowing Debtor a reasonable opportunity to be heard on the issue—notions of due process require notice and an opportunity to be heard, Debtor asserts, even where abstention is raised *sua sponte* by the Bankruptcy Court.

According to Debtor, courts have long recognized that "the requirement of notice is the cornerstone underpinning Bankruptcy Code procedure."  *In re Grumman Olson Indus., Inc.*, 467 B.R. 694, 706 (S.D.N.Y. 2012) (quoting *Western Auto Supply Co. v. Savage Arms, Inc. (In re Savage Indus., Inc.*), 43 F.3d 714, 720 (1st Cir. 1994)).  Debtor contends that the notice requirements of bankruptcy law, which are "founded in fundamental notions of procedural due process," *Western Auto Supply*, 43 F.3d. at 721, mandate that parties be afforded adequate notice and a meaningful opportunity to be heard before their interests are adversely affected in a bankruptcy proceeding— even where a court is acting *sua sponte*.  Debtor cites the *In re U.S. Mineral Products* decision, wherein this Court held that the bankruptcy court's *sua sponte* appointment of a chapter 11 trustee was not an abuse of discretion where parties were given notice and a hearing.  2004 WL 115234, at *3 (D. Del. Jan. 16, 2004), *aff'd*, 105 F. App'x 428 (3d Cir. 2004).  Although the Court agrees with

these overarching principles, this case (and several others cited by Debtor) do not apply them in the context of permissive abstention.[3]

Appellees, for their part, are no help on this issue, as they appear to misconstrue Tonopah's argument to be that *sua sponte* abstention is somehow impermissible.  (*See* D.I. 12 at 39-40).  Debtor acknowledges that bankruptcy courts have discretion to raise abstention *sua sponte*, but argues that their discretion is not boundless—"[r]ather, bankruptcy courts must exercise this discretion within the confines of due process by affording parties notice and an opportunity to be heard prior to determining to abstain from exercising jurisdiction over a matter."  (D.I. 13 at 2).  Appellees do not argue to the contrary and cite no cases where a court considered and rejected the due process limitations on bankruptcy courts' ability to abstain *sua sponte*.  To the contrary, in *Gober*, a case cited by Appellees, the Fifth Circuit Court of Appeals disagreed with the appellant's argument that it was denied due process, but it reached this conclusion because the bankruptcy court had provided the appellant with "ample opportunity to brief [the] issue and present arguments in opposition to abstention, and [the appellant] did so in a supplemental letter brief submitted at the request of the bankruptcy judge."  *Gober v. Terra + Corp. (In re Gober)*, 100 F.3d 1195, 1207 n.10 (5th Cir. 1996).

As Debtor correctly argues, and as this Court's own canvassing of case law has revealed, numerous courts have held that although a bankruptcy court may permissively abstain from adjudicating a matter pursuant to § 1334(c)(1) *sua sponte*, it may do so only where the parties have notice and an opportunity to be heard on the issue.  *See, e.g.*, *Stabler v. Beyers (In re Stabler)*, 418 B.R. 764, 769 (B.A.P. 8th Cir. 2009) ("[T]he procedure by which the issue [of abstention] came before the

---

[3]     *See* D.I. 10 at 19 (citing *Meyers v. Heffernan*, 2012 WL 1133732, at *5 (D. Del. Mar. 29, 2012) ("Failure to afford parties adequate notice and opportunity to be heard on a district judge's contemplated *sua sponte* transfer would in most, if not all, cases violate the parties' due process rights.")); *Schlesinger Inv. P'ship v. Fluor Corp.*, 671 F.2d 739, 742 (2d Cir. 1982) ("Failure to afford an opportunity to address the court's *sua sponte* motion to dismiss is, by itself, grounds for reversal.") (quoting *Lewis v. New York*, 547 F.2d 4, 5–6 & n. 4 (2d Cir.1976)).

bankruptcy court is largely irrelevant, as long as the Debtors had notice that the court was considering abstention"); *In re AFY, Inc.*, 539 B.R. 373, 378 (D. Neb. 2015) (concluding bankruptcy court abused its discretion by abstaining *sua sponte* without providing appellants the opportunity to be heard: "A bankruptcy court may reach the issue of abstention *sua sponte*, but only if the parties have advance notice that the court is considering abstention"); *PRN Pharmaceutical Services, LP v. Brownsburg Healthcare LLC (In re Kentuckiana Healthcare, LLC)*, 2014 WL 906121, at *3 (W.D. Ky. Mar. 7, 2014) ("The question of permissive abstention may be raised by this court *sua sponte*, as long as the parties have an opportunity to be heard."); *Vernell v. Washington Mutual Bank, F.A. (In re Vernell)*, 2008 WL 434718, at *1 (Bankr. S.D. Fla. Feb. 13, 2008) (same). In *In re LTC Holdings, Inc.*, for example, the bankruptcy court considered permissive abstention *sua sponte* only after providing the parties an opportunity to brief their positions. *LTC Holdings, Inc.*, 587 B.R. at 29.[4] These cases, though highly persuasive, are not binding on this Court.

We cannot fault Debtor for failing to cite a Third Circuit case in support of its due process argument. That there is little guidance from the Third Circuit on this issue is to be expected, given that a court of appeals has no jurisdiction to review the application of discretionary abstention. *See* 28 U.S.C. § 1334(d); *In re Federal Mogul, Inc.*, 300 F.3d 368, 389 n.14 (3d Cir. 2002). As for courts **within** the Third Circuit, many have determined to permissively abstain without notice and hearing but also without analysis of the due process issue, citing only the well-settled proposition that a bankruptcy court may raise abstention *sua sponte*; of those cases, notably, many cite the Fifth Circuit's *Gober* decision for support—the same decision which rejected appellant's due process

---

[4]     *See also In re Southmark Assocs. Ltd. P'ship*, 132 B.R. 231, 231 (Bankr. D. Conn. 1991) (considering issue after issuing order to show cause why court should not abstain from hearing adversary proceeding); *In re Encompass Services Corp.*, 337 B.R. 864, 869 (Bankr. S.D. Tex. 2006) ("both parties thoroughly briefed the issues raised" in abstention motion); *In re World Financial Servcs. Ctr., Inc.*, 64 B.R. 980, 981 (Bankr. S.D. Cal. 1986) (following hearing and denial of motion for mandatory abstention, court "requested additional briefs by the parties on the issue of discretionary abstention").

argument because the affected party had "ample opportunity to brief [the] issue and present arguments." *See e.g., In re Greene,* 1999 WL 689711, at *3 (E.D. Pa. 1999) (relying on *Gober*); *Bricker v. Martin*, 348 B.R. 28, 33-34 (Bankr. W.D. Pa. 2006) (same); *In re Vanhook,* 468 B.R. 694, 700 (Bankr. D. N.J. 2012) (same); *In re Lemoine*, 2012 WL 5906939, at *3 (Bankr. E.D. Pa. Nov. 26, 2012) (same); *In re Acevedo,* 546 B.R. 496, 504 (Bankr. D. Mass. 2016) (same).  For example, Appellees cite the *Old Augusta* decision for its proposition that "[i]t is widely accepted that a court may act *sua sponte* to remand a case on grounds of permissive abstention pursuant to Section 1334(c)(1)." (*See* D.I. 12 at 39 (citing *In re Old Augusta Dev. Group, Inc*., 2011 WL 2632147, at *3 (Bankr. S.D. Ga. May 16, 2011))).  But *Old Augusta* also relies on *Gober*, among other cases. *See id*.

Appellees point out that, "[u]nlike mandatory abstention, the motion requirement is conspicuously absent from the permissive abstention statute." (D.I. 12 at 39).  Permissive abstention under § 1334(c)(1) contains no requirement for a motion.  Mandatory abstention under § 1334(c)(2), on the other hand, does requires a motion—and such a motion initiates a contested matter and triggers the notice and hearing requirements of Bankruptcy Rule 9014.  Although the Court certainly views it as a best practice to give the affected party notice and a reasonable opportunity to be heard on permissive abstention, the Court will not create such a requirement where none exists.  Accordingly, the Court will decline to find that the Bankruptcy Court abused its discretion on the basis that it did not permit Debtor an opportunity to be heard.

### C.  No Abuse of Discretion in Bankruptcy Court's Consideration of Permissive Abstention Factors

Pursuant to the permissive abstention doctrine in § 1334(c)(1), a bankruptcy court may, in its discretion, abstain from hearing a proceeding "in the interest of justice, or in the interest of comity with State courts or respect for state law." 28 U.S.C. § 1334(c)(1).  As the Third Circuit has explained, "[f]ederal courts have a virtually unflagging obligation to exercise the jurisdiction conferred on

them." *In re SCH Corp.*, 569 F. App'x 119, 121 (3d Cir. 2014) (quoting *In re Semcrude, L.P.*,

728 F.3d 314, 320 (3d Cir. 2013)). Accordingly, permissive abstention "is the exception, not the rule.

It rarely should be invoked." *In re Penson Worldwide*, 587 B.R. 6, 22 (Bankr. D. Del. 2018 (citing

*Gwynedd Props., Inc. v. Lower Gwynedd Twp.*, 970 F.2d 1195, 1199 (3d Cir. 1992))). In deciding

whether permissive abstention is proper, courts typically utilize a twelve-factor test:

> (1) the effect or lack thereof on the efficient administration of the
> estate; (2) the extent to which state law issues predominate over
> bankruptcy issues; (3) the difficulty or unsettled nature of the
> applicable state law; (4) the presence of a related proceeding
> commenced in state court or other non-bankruptcy court; (5) the
> jurisdictional basis, if any, other than 28 U.S.C. § 1334; (6) the
> degree of relatedness or remoteness of the proceeding to the main
> bankruptcy case; (7) the substance rather than the form of an
> asserted "core" proceeding; (8) the feasibility of severing state law
> claims from core bankruptcy matters to allow judgments to be
> entered in state court with enforcement left to the bankruptcy court;
> (9) the burden on the court's docket; (10) the likelihood that the
> commencement of the proceeding in bankruptcy court involves
> forum shopping by one of the parties; (11) the existence of a right to
> a jury trial; and (12) the presence in the proceeding of non-debtor
> parties.

*See, e.g., Continental Airlines, Inc. v. Allen (In re Continental Airlines, Inc.),* 156 B.R. 441, 443

(Bankr. D. Del. 1993). The evaluation of these factors is not "merely a mathematical exercise." *Trans*

*World Airlines, Inc. v. Karabu Corp. (In re Trans World Airlines, Inc.),* 196 B.R. 711, 715 (Bankr.

D. Del. 1996). Rather, courts apply these factors flexibly, and some factors are weighed more heavily

than others. Of particular importance are the effect on the administration of the estate, whether the

proceeding is core or non-core, and whether the claim involves only state law issues. *See In re Welded*

*Constr., L.P.*, 609 B.R. 101, 112 (Bankr. D. Del. 2019); *Republic Underwriters Ins. Co. v. DBSI*

*Republic, LLC (In re DBSI, Inc.)*, 409 B.R. 720, 729 (Bankr. D. Del. 2009). Ultimately, the decision

"is left up to the broad discretion of the bankruptcy court." *DBSI, Inc.,* 409 B.R. at 729; *In re RNI*

*Wind Down Corp.,* 348 B.R. 286, 295 (Bankr. D. Del. 2006) (*quoting Luan Inv. S.E. v. Franklin 145*

*Corp. (In re Petrie Retail, Inc.)*, 304 F.3d 223, 232 (2d Cir. 2002)).

Because the Bankruptcy Court decided to abstain *sua sponte*, Debtor argues, the court did not have the benefit of Debtor's analysis of the permissive abstention factors, and it abused its discretion by failing to consider certain factors which weigh heavily in favor of exercising jurisdiction over and adjudicating the Claim Objection.  (D.I. 10 at 21).  To show abuse of discretion, Debtor must show that the "court's decision rests upon a clearly erroneous finding of fact, an errant conclusion of law, or an improper application of law to fact."  *Energy Future Holdings*, 558 B.R. at 686.  The record reflects that, prior to the Status Conference, the Bankruptcy Court was familiar with the facts and issues raised in the Proofs of Claim and Claim Objection, having decided numerous motions for relief in the course of the Plan confirmation proceedings arising from same—issues which, according to the Bankruptcy Court, "have been discussed quite a bit throughout these proceedings," indeed "discussed ad nauseum to date," and which "I fully understand and don't need further briefing on."  (1/12/21 at 12:10-13, 14:25, 15:1-4).  "[H]aving given a lot of thought to the path forward on the claims and related action, and to avoid further time delays and expenditures by the parties on these issues" (*id*. at 12:2-8), the Bankruptcy Court determined to permissively abstain from adjudicating the Claim Objection, and provided a well-reasoned explanation of the considerations supporting its decision, including that: (a) the court did not believe that litigating the Proofs of Claim in the Bankruptcy Court would be an efficient use of time; (b) the Nevada Action raised entirely state law issues; (c) there are non-debtor defendants in the Nevada Action and the claims against them overlap with those against Tonopah; and (d) there was no bankruptcy reason necessitating the Bankruptcy Court's adjudication of the Proofs of Claim (*id*. at 13:18-25; 14:1-2).  Debtor has failed to show that any of these findings are clearly erroneous.

**Efficient administration of the estate; degree of relatedness of the Claim Objection to the Chapter 11 case**.  With respect to these factors, Debtor argues that by filing the Proofs of Claim, Appellees "inherently trigger[ed] one of the bankruptcy process's core features—the claims

resolution process," *Welded Constr.*, 609 B.R. at 116, which is "intimately related to the bankruptcy proceedings," *Penson*, 587 B.R. at 23 (internal quotations omitted).  (*See* D.I. 10 at 22).  Debtor further argues that the Claim Objection would have resolved whether Appellees are creditors and thus have standing to challenge the Plan through the Confirmation Appeal.  Appellees disagree.  Appellees disagree that adjudicating the Claim Objection will have any impact on the administration of the estate, as the rights of unsecured creditors (like Appellees) are unimpaired under the Plan.[5]  Appellees objected to plan confirmation, on the basis that their claims would be impaired if the reorganized Debtor did not generate sufficient revenue to satisfy a judgment in the Nevada Action, and they were overruled based on evidence of the Debtor's substantial financial backing, including the working capital facility and letters of credit.  Accordingly, Appellees argue, abstention affects neither administration of the estate nor unsecured creditors' recovery, as the Plan already delineates their recovery.  According to Appellees, Debtor's additional argument that the Claim Objection would moot the Confirmation Appeal assumes Debtor's success on the Claim Objection.  The Court agrees with Appellees and finds no error in the Bankruptcy Court's finding that no bankruptcy reason necessitated its adjudication of the Proofs of Claim.  Given the Plan's assurance that Appellees' claims passed through unimpaired to the reorganized Debtor, adjudicating the Proofs of Claim will have no great effect on administration of the estate and would not constitute an efficient use of time.

**Whether the matter is core or non-core.**  A creditor "who invokes the aid of the bankruptcy court by offering a proof of claim and demanding its allowance must abide the consequences of that procedure." *Stern v. Marshall*, 564 U.S. 462, 496 (2011).  Here, Tonopah did not establish a bar date, and Appellees were not required to file their Proofs of Claim.  They nevertheless chose to invoke the

---

[5]     Plan ¶ 5.4 ("General Unsecured Claims are unimpaired Claims . . . each holder of an Allowed General Unsecured Claim shall receive treatment that: (i) leaves unaltered the legal, equitable, or contractual rights to which the holder of such Allowed General Unsecured Claim is entitled; or (ii) otherwise leaves such Allowed General Unsecured Claim unimpaired pursuant to section 1124 of the Bankruptcy Code.")

Bankruptcy Court's aid by "offering a proof of claim and demanding its allowance," and Debtor asserts that they "must abide the consequences of that procedure." *Id.*

In the Third Circuit, a proceeding is core "(1) if it invokes a substantive right provided by title 11 or (2) if it is a proceeding, that by its nature, could arise only in the context of a bankruptcy case." *Official Comm. of Unsecured Creditors of Integrated Health Servs. v. Elkins (In re Integrated Health Servs.)*, 291 B.R. 615, 618 (Bankr. D. Del. 2010) (finding that an adversary proceeding was not core because it was not dependent on any provisions of the Bankruptcy Code and the allegations of breach of fiduciary duty and waste of corporate assets were state law causes of action) (citations and internal quotations omitted)).

Debtor is correct that allowance or disallowance of claims filed against the estate are "core" bankruptcy matters.  28 U.S.C.  § 157(b)(2)(B) and (C).  But a proceeding is not core simply because it is listed in 28 U.S.C. § 157(b).  *See DHP Holdings II Corp.*, 435 B.R. at 228 (Bankr. D. Del. 2010) (noting that an inquiry into whether a proceeding is core does not end because it is listed in 28 U.S.C. § 157(b)(2)(B) and that a court must examine if the proceeding invokes a substantive right provided by title 11 or if it could arise only in the context of a bankruptcy case).  Appellees argue that, in this case, although the Claim Objection involves disallowance of claims as is listed in 28 U.S.C. § 157(b)(2)(B), Tonopah is really attempting to adjudicate the merits of the Nevada Action by seeking disallowance of Appellees' claims for failure to state a cause of action under Nevada state law and lack of standing.  The Claim Objection is neither dependent on any provision of the Bankruptcy Code nor is it a proceeding that could only arise in the context of a bankruptcy case.  Rather, the direct claims asserted against Tonopah—which include fraud, tortious interference with contract, breach of contract—are quintessential state law causes of action. The Court agrees with Appellees that the substance of the Claim Objection is largely non-core.

20

***The extent to which state law issues predominate over bankruptcy issues.***  Debtor concedes that the Proofs of Claim are based on state law causes of action.  Nonetheless, Debtor argues that, while state law issues may predominate, this factor is not dispositive because the state law issues arise in the context of an objection to a proof of claim, and claim reconciliation is a bankruptcy issue. While not typically the case, as already discussed, there is no reason to adjudicate the Proofs of Claim in the Bankruptcy Court in this particular case, and bankruptcy law has almost no substantive effect on the outcome.  Rather, issues of state law predominate the Nevada Action, including whether Appellees state a claim under Nevada law.  The Court finds no error in the Bankruptcy Court's finding that this dispute raises entirely state law issues.

***Presence of non-debtor defendants.***  Regarding the Bankruptcy Court's finding that there are non-debtor defendants in the Nevada Action, and that claims against them overlap with those against Tonopah, this also supports abstention.  The presence of non-debtor parties favors abstention when the proceedings primarily involve claims asserted by or against non-debtors.  *Burtch v. Seaport Capital, LLC (In re Direct Response Media, Inc.*), 466 B.R. 626, 659 (Bankr. D. Del 2012) (citations omitted).  As Appellees correctly point out, the Nevada Action is multi-party litigation, where Tonopah is only one of eight defendants.  The Bankruptcy Court and Debtor have acknowledged that, given the nature of the claims asserted in the Nevada Action and the theories of liability, it will be difficult to determine Tonopah's liability without adjudicating the liability of the other defendants who are not before the Bankruptcy Court.  Further, to the extent Appellees are successful in the Nevada Action, Tonopah has made clear that it will look to its co-defendants to bear the weight of the damages sought.  In sum, as there is no longer a bankruptcy purpose to be served by adjudicating the Claim Objection, abstention will allow the claims asserted against Tonopah to proceed in a single forum and eliminate unnecessary, duplicative litigation.  Abstention under these circumstances

comports with judicial economy, avoids the potential entry of inconsistent and unnecessary rulings, and curtails unnecessary expenditures of the parties.

**Presence of related proceeding in state court**. Debtor argues that the Bankruptcy Court's exercise of jurisdiction over the Claim Objection is particularly appropriate given that the Nevada Action is no longer pending in Nevada state court. But the Nevada Action was pending in state court at the time the Bankruptcy Court entered the Abstention Order, and the later development provides no basis to disturb its abstention ruling.

**Jury trial.** Abstention is further favored when a party asserts its right to a jury trial and the court determining whether to abstain cannot provide one. *See LaRoche Indus.*, 312 B.R. at 255. Appellees asserted the right to a jury trial in the Nevada Action against all of the defendants, including Tonopah, and the Bankruptcy Court cannot provide a jury trial absent the parties' consent.

In sum, the Court finds no clear error in the Bankruptcy Court's findings in support of its determination that case considerations weigh in favor of abstention. The more significant factors support abstention, and Debtor's arguments as to the remaining factors do not support a finding of abuse.[6] The Bankruptcy Court's decision to abstain under these circumstances fell well within its discretion.

---

[6]  According to Debtor, the Bankruptcy Court abused its discretion by failing to specifically consider each and every one of the permissive abstention factors. (*See* D.I. 10 at 27 (citing *Turturici v. Nat'l Mortg. Servicing LP*, 2010 WL 3212762, at *5 (E.D. Cal. Aug. 12, 2010) ("The record does not reveal that the bankruptcy court considered the [permissive] abstention factors when deciding to abstain in this case. '[B]y failing to consider the[se] twelve [abstention factors], [t]he Bankruptcy Court abused its discretion[.]'"))) Debtor cites no authority in this Circuit requiring the Bankruptcy Court to provide a detailed analysis of every factor in support of an abstention ruling.

**D.    No Abuse of Discretion in Bankruptcy Court's Determination Not to Consider Whether the Claims Should be Disallowed for Failure to State a Claim**

Objections to proofs of claim are considered "contested matters" governed by Bankruptcy Rule 9014. *In re Lomas Fin. Corp.*, 212 B.R. 46, 52 (Bankr. D. Del. 1997). Bankruptcy Rule 9014(c) provides that certain rules set forth in Part VII of the Bankruptcy Rules governing adversary proceedings shall apply to contested matters. Fed. R. Bankr. P. 9014(c). Further, the Bankruptcy Court may apply one or more of the rules in Part VII of the Bankruptcy Rules not expressly made applicable to contested matters by Rule 9014(c) at any stage of a contested matter. *Id.* Bankruptcy Rule 7012 provides that Federal Rule of Civil Procedure 12 applies in adversary proceedings. Fed. R. Bankr. P. 7012. While not expressly made applicable to contested matters, Bankruptcy Rule 9014(c) provides the Bankruptcy Court with "discretion to apply Bankruptcy Rule 7012 [and thereby Federal Rule 12(b)(6)] to a contested matter in the interest of judicial economy and the preservation of estate resources." *In re Energy Future Holdings Corp.*, 2021 WL 957301, at *5 n.1 (3d Cir. Mar. 15, 2021). Part VII of the Bankruptcy Rules is "based on the premise that to the extent possible practice before the bankruptcy courts and the district court should be the same." *Matter of Stavriotis*, 977 F.2d 1202, 1204 (7th Cir. 1992). "In light of this rationale, even though bankruptcy courts are not required to do so, many such courts choose to apply Part VII bankruptcy rules to contested matters." *Id.*

Accordingly, the Bankruptcy Court had discretion to direct that Rule 7012 applied to the Claim Objection as a contested matter but declined to do so. (*See* 1/12/21 Tr. 12:19). According to Debtor, this ruling was an abuse of discretion because the Bankruptcy Court did not consider the interests of judicial economy and preservation of estate resources that would be served by considering the Claim Objection. Specifically, the Claim Objection was fully briefed, and the parties were prepared to move forward with a hearing on the Claim Objection, which might have mooted the Confirmation Appeal. According to Debtor, the Bankruptcy Court abused its discretion by failing to

consider these circumstances in its analysis of whether application of Rule 12(b) to the Claim Objection was appropriate.

Debtor's argument lacks merit. The Bankruptcy Court correctly noted that "the debtor's pending motion and objection initiated . . . a contested matter and, under Rule 9014, the [Bankruptcy] Court is not required to consider a motion to dismiss under Rule 7012 in such a matter. Whether or not I do so is left to my discretion." (1/12/21 Tr. at 12:16-21). Tonopah fails to cite a single case holding that the Bankruptcy Court was ***required*** to consider an objection to claim based on Rule 7012. At best, a bankruptcy court "may" direct that Rule 7012 apply to a contested matter—which the Bankruptcy Court justifiably declined to do.

Contrary to Debtor's assertions, although not required to do so, the Bankruptcy Court did consider the interests of judicial economy and preservation of estate resources when entering the Abstention Order, among other considerations. While the Bankruptcy Court might have considered the motion to dismiss under Rule 12(b) prior to confirmation had there been sufficient time, it declined to do so post-confirmation "for a variety of reasons" including that "it may be an inefficient use of my time if ultimately, after considering the arguments presented, I find that [Appellees] should be permitted to amend their Nevada complaint. And of course such a finding would also raise, I think, jurisdictional and other procedural questions given that the action is currently pending, albeit stayed, before a Nevada state court." (1/12/21 Tr. at 12:23-13:10). The Bankruptcy Court noted that entry of the Abstention Order would "avoid further time delays and expenditures by the parties on these issues . . ." (*id*. at 12:7-8) and stated that "for efficiency's sake, let's just get those actions restarted and get the parties focused on that" (*id*. at 14:21-23).

The Bankruptcy Court's well-reasoned explanation supports its exercise of discretion. Debtor's argument—that the Bankruptcy Court's failure to consider the possible effect of the Rule 12 motion on the pending Confirmation Appeal constituted an abuse of discretion—is belied by the

record.  (*See id*. at 15:20-16:6; 16:19-25).  That the parties were prepared to move forward with a hearing on a Rule 7012 motion to dismiss—which proceeding might possibly moot the Confirmation Appeal—and that this path was the Debtor's clear preference, falls far short of demonstrating an abuse of discretion by the Bankruptcy Court.

## IV.    <u>CONCLUSION</u>

For the reasons set forth herein, the Abstention Order is affirmed.  An appropriate order will be entered.